UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL COPELAND, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:23-CV-816-JSD |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant.[1] | ) ) ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Michael Copeland ("Copeland") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Copeland's claim for DIB.

**I.     Background**

On June 3, 2019, Copeland protectively filed an application for DIB, alleging a disability onset date of December 21, 2018. (Tr. 239-40). Copeland was 41 years old on his alleged onset date of disability. (Tr. 1183) In his Disability Report, Copeland alleged disability based on three right rotator cuff surgeries, left should torn labrum, bulging discs in his cervical and lumbar spine, cervical and lumbar osteoarthritis, bilateral carpal tunnel syndrome, deep vein thrombosis, a blood

---

[1] Martin O'Malley is now the Commissioner of Social Security. He is automatically substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).

disorder, and sleep apnea. (Tr. 287). Defendant issued a Notice of Disapproved Claims, dated March 6, 2020. (Tr. 116)

After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision, dated March 31, 2021. (Tr. 7-26) After exhausting his claim, Copeland filed a Complaint in the United States District Court, Eastern District of Missouri, Case No. 4:21-CV-1445 on December 9, 2021. (Tr. 1218) On Defendant's Motion, the United States Magistrate Judge issued an order and Judgment remanding this action to the ALJ to property evaluate opinion evidence, among other things. (Tr. 1232-33) On May 18, 2023 and following a second hearing, the ALJ issued another unfavorable decision. (Tr. 1168-92)

In that unfavorable decision, the ALJ found Copeland had the severe impairments of cervical and lumbar degenerative disease; chronic obstructive pulmonary disease (COPD); obstructive sleep apnea (OSA); obesity; residuals from prior right shoulder surgery and left shoulder tendinopathies; bilateral carpal tunnel syndrome (CTS); and ulnar neuropathy. (Tr. 1174) The ALJ found that Copeland did not have an impairment or combination listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 1174) However, the ALJ found that Copeland retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §404.1567(a) with the following limitations: can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl and can occasionally reach overhead with the bilateral upper extremities. (Tr. 1175-76) The ALJ found that Copeland "should avoid extreme cold, extreme heat, humidity, and vibration; avoid exposure to concentrated gases, dust, odors, fumes, and poor ventilation and can frequently handle, finger, and feel with the bilateral upper extremities." *Id*.

The ALJ discussed the opinion of Copeland's treating physician, Dr. Wagner. In October 2020, Dr. Wagner opined that Copeland could stand and/or walk less than two hours, and sit for at least two hours in an eight-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently; never climb ladders, ropes, or scaffolds, balance, kneel, crouch, or crawl; and occasionally stoop, reach, grasp, grip, finger, feel handle. The ALJ found Dr. Wagner's opinion to be "partially persuasive" but that the evidence submitted at the hearing was more consistent with a range of sedentary work. (Tr. 1183) The ALJ discerned that the evidence submitted at the hearing level, and Dr. Wagner's examination reports from 2021 and 2022, were not consistent with such extreme sitting, standing, and walking limitations. (Tr. 1183) The ALJ noted that Copeland was stable on pain medication in 2021 and 2022 and was able to perform non-strenuous activities of daily living. (Tr. 1183)

The ALJ found that Copeland's impairments would not preclude him from performing work that exists in significant numbers in the national economy. (Tr. 1183) As a result, the ALJ found that Copeland was not disabled. (Tr. 1184) The decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Copeland filed this appeal on June 26, 2023. (ECF No. 1) On February 9, 2024, Copeland filed a Brief in Support of his Complaint. (ECF No. 19) The Commissioner filed a Brief in Support of the Answer on March 8, 2024. (ECF No. 23).

As to Copeland's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

## II.    Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

### A. The RFC and the ALJ's Decision is Supported by Substantial Evidence

Copeland contends that the ALJ failed, for the second time, to properly evaluate the opinion evidence and his RFC. (ECF No. 19 at 5) Specifically, Copeland states that the ALJ did not evaluate his ability to sit for long periods and whether Copeland requires breaks during his workday. Copeland argues that the opinion of his treating physician Dr. Wagner was persuasive and the ALJ should have adopted it. (ECF No. 17 at 7-8) Rather, Copeland maintains that "[s]ubstantial evidence does not support the ALJ's finding that Dr. Wagner's medical opinion is only partially persuasive." (ECF No. 19 at 16) Copeland claims that the ALJ's opinion is not within the "zone of choice" because it fails to include "material evidence of the record, namely, that Copeland cannot sit 6 hours per day and he must change positions to relieve the pressure on his lumbar nerve roots." (ECF No. 19 at 16) *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007)("An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had we been the initial finder of fact."); *Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019); *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024)("If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions.").

Further, Copeland contends that the ALJ failed to comply with the Appeals Council's directive on remand. That is, on initial review, the Appeals Council noted that, although the ALJ acknowledged Copeland's "statements that he cannot sit for long periods", the ALJ did not evaluate Copeland's ability to sit for long periods. The Appeals Council decided that "none of [Copeland's] activities show an ability to sit throughout the workday." (Tr. 1232) Copeland asserts

5

that, although, the Appeals Council ordered that ALJ to evaluate Copeland's ability to sit, the ALJ's analysis of Copeland's ability to sit for long periods is still insufficient. (ECF No. 19 at 13-14)

In response, the Commissioner argues that the ALJ thoroughly considered the entire record and fashioned the RFC based upon the restrictions the ALJ found consistent with the evidence. (Tr. 19-23). Contrary to Copeland's argument, the evidence before the Court demonstrates that the ALJ considered, evaluated, and incorporated Copeland's testimonial and medical evidence when fashioning his RFC. The ALJ accounted for Copeland's work-related limitations by limiting him to a significantly reduced range of sedentary work.

"The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004)). "The standard for substantial evidence is not high." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). In determining whether evidence is substantial, this Court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis*, 477 F.3d at 1040 (citing *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000)). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

Under the regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from your medical sources."20 C.F.R. § 404.1520c(a).  Rather, when evaluating the persuasiveness of medical opinions and prior administrative medical findings,  ALJs look at the supportability and consistency of those findings. *Id.*  "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The Commissioner may also assign 'little weight' to a treating physician's opinion when it is either internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Chesser v. Berryhill*, 858 F.3d 1161, 1164-65 (8th Cir. 2017)).

Here, the Court must consider whether the six-hour sitting limitation found by the ALJ is supported by the record. Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC. *See Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir.2004). While the ALJ retains the authority to determine the RFC and that decision must be supported by some medical evidence, "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir.2010); *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The Court holds that the record supports a finding that the RFC was appropriate, given the evidence of effective treatments and lack of disabling symptoms. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'"). To support the RFC determination that Copeland could sit for up to six hours of an eight-hour workday, the ALJ recalled Copeland's medical treatment. Copeland has a history of several

shoulder surgeries, most recently in July 2017. Copeland's shoulder impairment appeared to improve following the July 2017 surgery and, by January 2018, he had good strength. Copeland was recommended to undergo lumbar surgery but needs to lose weight first. Even so, his back pain was controlled with medication, and he could accomplish non-strenuous activities of daily living (Tr. 1360-1410).

The Court additionally holds that Copeland's treatment is consistent with the RFC, including sedentary work with additional postural and manipulative limitations. The ALJ recognized Copeland received conservative treatment in the form of medication for his back pain and Copeland reported that the medication was working well to cover his pain. Here, the ALJ found that Copeland's claim that he suffers from back pain was substantiated by the record, but that the severity of his pain was not disabling. The ALJ reached this conclusion by taking into account the medical treatment that Copeland received.

Upon evaluation, the ALJ discerned that hearing testimony and Copeland's claims of disability did not reflect the magnitude of her symptoms presented to her medical care providers. Specifically, in June and July 2021, Copeland's pain was controlled with medication. (Tr. 1180) Copeland did laundry, used the dishwasher, and did the cooking. (Tr. 1180) He could throw the football with his girlfriend's son for six to 10 times before his shoulder pain became troublesome. *Id*. He went to his river house and on dates. *Id*.

In August, September, October 2021, Copeland's pain remained stable with medication. (Tr. 1180) He again was performing household chores and was physically active several times a week and comfortably performed non-strenuous activities of daily living. (Tr. 1180) In March and April 2022, Dr. Wagner noted that Copeland's low back and shoulder pain was quite well controlled on medication. (Tr. 1180) His pain level was unchanged in May 2022.

8

In June 2022, Copeland stated that his pain level was up and down. (Tr. 1180) His prediabetic neuropathy caused pain in his feet and he had pain in his shoulders due to lifting or reaching. *Id*. In July 2022, Copeland stated he had six to 10 bad days per month and his sciatica had resolved. (Tr. 1180)

In August 2022, Copeland complained his back and shoulder pain were the same. (Tr. 1180) He was sedentary on bad days and up and about on good days. (Tr. 1180) His shoulders were tender with pain caused by pressure, lifting, or reaching. Id. In September 2022, Copeland's pain and activity was unchanged. (Tr. 1180)

In October 2022, Copeland stated he was doing "ok", without change in his back or shoulders. (Tr. 1180) His shoulder pain was mild constantly and increased when he was using his arms for cooking or reaching. *Id*. His knee pain increased when he was on stairs but resolved on a level surface. (Tr. 1180-81)

In November and December 2022, Copeland had stable shoulder and back pain. (Tr. 1181) Copeland was able to perform non-strenuous activities of daily living, with back pain when standing to watch football and aches when it was cold and rainy. *Id*. Voltaren gel help his joint stiffness. *Id.* Thus, the ALJ properly found that the infrequent alterations to the Copeland's pharmaceutical treatment and reported that his medications helped his condition.

The ALJ further considered the prior administrative medical findings of non-examining State Agency consultant, who at the initial stage found that Copeland could life and carry in the light exertional range and otherwise perform a range of sedentary work with reaching, climbing, postural, and environmental limitations. (Tr. 85-87) At the reconsideration stage, the consultant placed similar limitations on Copeland's abilities, with the additional need for a short break every two hours. (Tr. 99-101). Notably, a break every two hours still makes Copeland eligible for

9

sedentary work. *See* SSR 96-9P (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."). The ALJ found these non-examining reports persuasive because they were consistent with and supported by the medical evidence and other evidence, including clinical findings of treatment providers. (Tr. 1182); *see also Hazel S. v. Kijakazi*, No. 4:22 CV 172 JMB, 2023 WL 4263170, at *7 (E.D. Mo. June 29, 2023) ("courts have held that ALJs can find prior administrative findings (PAMFs) … more persuasive than other opinions"). The Court holds that the ALJ acted within the acceptable zone of choice when crediting the PAMPs instead of Copeland's treating physicians.

The ALJ likewise considered his normal activities including hunting, throwing around a football, cleaning, and other chores. *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir.2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). The ALJ emphasized that Copeland could function independently and cared for himself and lived a relatively full life. In October 2019, Copeland carried out non-strenuous activities of daily living, although he had to take breaks at times due to pain.  (Tr. 1178).  He mowed the grass for half an hour at a time and went hunting for five days, despite his pain. (Tr. 1178-79) Likewise, in February and March 2021, Copeland reported that his pain was stable and his activity had increased. (Tr. 1180) In April 2021, he had grilled barbeque for retired union workers, watched a practice football game, unloaded and loaded the dishwasher and did the cooking. (Tr. 1180) In May 2021, Copeland's back and shoulder pain was controlled as long as he avoided significant bending or lifting. (Tr. 1180) These reported activities of daily living provide substantial evidence supporting the ALJ's determination that

10

Copeland retained the ability to sit for six hours of an eight-hour workday. *See Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012).

The Court holds that Copeland's citations to contradictory evidence does not require reversal. For example, the ALJ acknowledged that Dr. Meek opined in July 2020 that Copeland needed surgical correction for his back and shoulder pain, but Copeland was not a surgery candidate due to blood clots and obesity. (Tr. 1179) Dr. Meeks advised Copeland to lose weight to make him a better candidate for surgery. (Tr. 1074, 1179) However, in March 2019, Dr. John Finnie, M.D. indicated that Copeland was a surgical candidate, and his blood clots could be controlled with medication. (Tr. 585-86) In any event, the ALJ discussed that Copeland's symptoms had improved with conservative treatment. (Tr. 1179-80) More to it, the Court notes that the RFC outlined by the ALJ was more restrictive than the opinions of several medical sources in the record, demonstrating that the ALJ properly fashioned the RFC in light of the credible medical sources. *See Ross v. O'Malley*, 92 F.4th 775, 778–79 (8th Cir. 2024) ("The evidence may support a finding that Ross's limited head and neck movement prevents him from working in the national economy, but the evidence also supports the contrary finding that he can perform the jobs of a document preparer and surveillance system monitor. Because the record supports two inconsistent conclusions, both of which are in the available zone of choice, the ALJ did not err in his determination.")

Finally, the Court addresses Copeland's argument that the ALJ did not comply with the Appeal's Council's directive to evaluate his ability to sit. (ECF No. 19 at 13-14) The Court notes the ALJ's sedentary recommendation was based upon citations in the record where Copeland reported that his pain subsided when sitting (Tr. 648, 1178), the State Agency medical consultants who evaluated Copeland's ability to sit (Tr. 1182), and Copeland's own physician, Kurt Eichholz,

11

who did not impose any sitting restrictions (Tr. 743) However, even if the ALJ did not follow the Appeals Council's order, this failure is outside the Court's judicial review. *See Winchester v. Kijakazi*, No. 3:21-CV-86, 2022 WL 20505356, at *5 (D.N.D. Sept. 27, 2022) ("This court's research identified no case within the Eighth Circuit that has held an ALJ's failure to comply with a directive of the Appeals Council on remand is reviewable by a district court."); *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) ("Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review."). In any event, the Court concludes the RFC is supported by substantial evidence.

In sum, the Court finds that substantial evidence supports the ALJ's finding. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Wiese v. Astrue,* 552 F.3d 728, 730 (8th Cir.2009); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). Here there was voluminous evidence documenting Copeland's symptoms and impairments, which supported the ALJ's decision that Copeland was not disabled. The ALJ's determination fell within the zone of choice, which this Court will not disturb. *See Winship*, 2021 WL 1055196, at *2 (citing *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) ("Courts 'defer heavily to the findings and conclusions of the Social Security Administration' and will disturb the Commissioner's decision only if it falls outside the 'zone of choice.'").

**IV.       Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Martin O'Malley, Commissioner of Social Security,  is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of September, 2024.